# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MITCHELL PARTNERS, L.P., on
behalf of itself and all others similarly
situated,

Plaintiff

v.

IREX CORPORATION, NORTH
LIME HOLDINGS CORP., W. KIRK
LIDDELL, DAVID C. KLEINMAN,
PAUL J. ISAAC, JOANN M. JUDGE,
MICHAEL J. LARDNER, JOHN O.
SHIRK, THOMAS W. WOLF, LORI
A. PICKELL, JAMES E. HIPOLIT,
JANE E. PINKERTON, KENNETH G.
STOUDT, and N. THOMPSON
WASHBURN

Defendants

Civ. No. 08-4814

**CLASS ACTION**
(Jury Trial Demanded)

## PLAINTIFF MITCHELL PARTNERS, L.P.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, IN THE ALTERNATIVE, TO STAY THE ACTION

George W. Croner, Esquire
Christina Donato Saler, Esquire
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
(215) 238-1700 - phone
(215) 23801968 - facsimile

New Master) _1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.    INTRODUCTION ................................................................................................1

II.   THE FACTS ALLEGED IN PLAINTIFF'S COMPLAINT ................................2

III.  STANDARD OF REVIEW.................................................................................11

LEGAL ARGUMENT ..................................................................................................12

IV.   PLAINTIFF'S CLAIMS ARE TIMELY ..........................................................12

      A.    Shareholder Approval Of The Transaction On October 10, 2006
            Starts The Running Of The Statute Of Limitations On Plaintiff's
            Breach Of Fiduciary Duty Claims ..........................................................15

      B.    Plaintiff's Unjust Enrichment Claims Did Not Accrue
            Until Plaintiff Was Harmed By Defendants' Breach Of
            Fiduciary Duty ........................................................................................18

      C.    Plaintiff's Claim Of Aiding And Abetting Against the
            Additional Defendants Accrues Concurrently With
            Plaintiff's Breach Of Fiduciary Duty Claim............................................18

V.    AN APPRAISAL PROCEEDING PROVIDES AN EQUITABLE
      VALUATION REMEDY THAT DOES NOT PREEMPT
      PLAINTIFF'S TORT CLAIMS AGAINST THE MAJORITY
      SHAREHOLDERS................................................................................................19

VI.   PLAINTIFF, AS A MINORITY SHAREHOLDER, HAS
      PROPERLY ASSERTED DIRECT CLAIMS AGAINST
      NORTH LIME, IREX, AND THE INDIVIDUAL DIRECTOR/OFFICER
      DEFENDANTS WHO, COLLECTIVELY, REPRESENT THE
      CONTROLLING MAJORITY SHAREHOLDER GROUP.................................23

VII.  PLAINTIFF'S AIDINGAND ABETTING CLAIM (COUNT II)
      PROPERLY STATES A CLAIM FOR WHICH RELIEF MAY
      BE GRANTED .....................................................................................................27

VIII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT III)
      IS NOT DUPLICATIVE OF PLAINTIFF'S BREACH OF
      FIDUCIARY DUTY CLAIM ...............................................................................29

IX.   THE PENDENCY OF THE APPRAISAL PROCEEDING
      DOES NOT PRESENT "EXCEPTIONAL CIRCUMSTANCES"
      WARRANTING A STAY OF THIS ACTION ....................................................31

X.    CONCLUSION ..................................................................................................35

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Allegheny General Hospital v. Philip Morris, Inc.,*
    228 F.3d 429 (3d Cir. 2000) ................................................................32, 33

*Barnes v. American Tobacco Co.,*
    161 F.3d 127 (3d Cir. 1998) ...................................................................16

*Ciccarelli v. Gichner Systems Group, Inc.,*
    862 F. Supp. 1293 (M.D. Pa. 1994).........................................................20

*Colorado River Water Conservation District v. United States,*
    424 U.S. 800 (1976) .............................................................................34

*Conley v. Gibson,*
    355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)...................................14, 15

*Davis v. U.S. Gypsum Co.,*
    451 F.2d 659 (3d Cir.1971) ...................................................................28

*Dofflemyer v. W.F. Hall Printing Co.,*
    558 F. Supp. 372 (D. Del. 1983) ......................................18, 19, 23, 24, 25, 37

*Dombrowski v. Gould Electronics, Inc.,*
    954 F. Supp. 1006 (M.D. Pa. 1996)..........................................................16

*Dower v. Mosser Industrial, Inc.,*
    488 F. Supp. 1328 (E.D. Pa. 1980).........................................................36

*Herskowitz v. Nutri/Systems, Inc.,*
    857 F.2d 179 (3d Cir. 1988) ........................................................20, 22, 24, 25

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ...............................................................................15

*In re Earned Capital Corp.,*
    331 B.R. 208 (W.D. Pa. 2005)................................................................28

*In re Loranger Manufacturing Corp.,*
    324 B.R. 575 (W.D. Pa. B.R. 2005) .....................................................15, 18

*In re Phar-Mor, Inc. Securities Litigation,*
   892 F. Supp. 676 (W.D. Pa. 1995) ................................................................................20

*Johnsrud v. Carter,*
   620 F.2d 29 (3d Cir. 1980) ......................................................................................14

*Kucera v. Met. Life Insurance Co.,*
   719 F.2d 678 (3rd Cir. 1983) ........................................................................16, 20, 21

*Landis v. North America Co.,*
   299 U.S. 248 (1931) ................................................................................................34

*Lum v. Bank of America,*
   361 F.3d 217 (3d Cir. 2004) ....................................................................................15

*National Forge Co. v. Official Committee of Unsecured Creditors of National Forge Co.,*
   344 B.R. 340 (W.D. Pa. 2006)................................................................................19

*Nigro v. Blumberg,*
   373 F. Supp. 1206 (E.D. Pa. 1974)..........................................................................35

*Orchard v. Covelli,*
   590 F. Supp. 1548 (W.D. Pa. 1984), *appeal dismissed,* 791 F.2d 920 (3d Cir.
   1986) ........................................................................................................................28

*Reis v. Barley, Snyder, Senft & Cohen LLC,*
   484 F. Supp. 2d 337 (E.D. Pa. 2007) (Gardner, J.) ..............................................21

*Reis v. Barley, Snyder, Senft & Cohen LLC,*
   484 F. Supp. 337 (E.D. Pa. 2007)............................................................................30

*Rocks v. City of Philadelphia, ,*
   868 F.2d 644 (3d Cir. 1989) ....................................................................................14

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris,*
   171 F.3d 912 (3d Cir. 1999) ..............................................................................33, 34

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   127 S. Ct. 2499 (2007)......................................................................................5, 6, 15

*Texaco, Inc. v. Borda,*
   383 F.2d 607 (3d Cir. 1967) ....................................................................................34

*Tyler v. O'Neill,*
   994 F. Supp. 603 (E.D. Pa. 1998)............................................................................26

*Warden v. McLelland,*
    288 F.3d 105 (3d Cir. 2002) .................................................................24

*Weis-Buy Services, Inc. v. Paglia,*
    411 F.3d 415 (3d Cir. 2005) ..........................................................18, 20

*Wisniewski v. Johns-Manville Corp.,*
    759 F.2d 271 (3d Cir.1985) .................................................................15

## STATE CASES

*Bair v. Purcell,*
    2008 WL 250096 (M.D. Pa. Jan. 29, 2008)..............................................26, 28

*Barter v. Diodoardo,*
    771 A.2d 835 (Pa. Super. Ct. 2001)..........................................................29

*Bell v. Brady,*
    31 A.2d 547 (Pa. 1943)......................................................................16

*Bren v. Capital Reality Group Sr. Housing, Inc.,*
    2004 WL 370214 (Del. Ch. Feb. 27, 2004) ...................................................18

*Brennen v. Wachovia,*
    2004 WL 2988520 (E.D. Pa. Dec. 20, 2004).................................................16

*Coltec Industrial, Inc. v. Continental Insurance Co.,*
    2005 WL 1126951 (E.D. Pa. May 11, 2005)..................................................34

*Empire Coal Min. & Development, Inc. v. Department of Environmental Resources,*
    623 A.2d 897 (Pa. Cmmw. Ct.), *app. denied,* 629 A.2d 1384 (Pa. 1993) .........................17

*Engel v. Magnavox Co.,*
    1978 WL 976 (Del. Ch. Oct. 16, 1978) .....................................................36

*Ferber v. America Lamp Corp.,*
    469 A.2d 1046 (Pa.1983)....................................................................26

*Flood v. Makowski,*
    2004 WL 1908221 (M.D. Pa. Aug. 24, 2004) ...............................................34

*Harper v. Superior Tool and Die Co., ,*
    1987 WL 18414 (E.D. Pa. 1987) ...........................................................28

*Hornsby v. Lohmeyer,*
    72 A.2d 294 (Pa. 1950).....................................................................26

*In Matter of Application of Advanced Drivers Education Products and Training, Inc.*,
   1996 WL 487940 (Del. Ch. Aug. 16, 1996) ................................................................. 36, 37

*In re American Sterilizer Shareholder Litigation*,
   1985 WL 4027 (E.D. Pa. 1985) ................................................................................. 36

*In re Jones & Laughlin Steel Corp.*,
   412 A.2d 1099, 1102-03 ) (Pa. 1980) ........................................................................ 29

*JRNA, Inc. v. Snow*,
   2007 WL 2253493 (E.D. Pa. Aug. 3, 2007) ................................................................. 32

*Koken v. Steinberg*,
   825 A.2d 723 (Pa. Cmmw. Ct. 2003) ........................................................................ 22

*Korman Corp. v. Franklin Town Corp.*,
   1984 WL 2465 (Pa. Comm. Pl. 1984) ........................................................................ 28

*Maillie v. Greater Delaware Valley Health Care, Inc.*,
   628 A.2d 528 (Pa. Cmmw. Ct. 1993), *appeal denied*, 644 A.2d 1204 (Pa. 1994) ...... 15, 17

*Pence v. National Beef Packing Co.*,
   1976 WL 1703 (Del. Ch. 1976) ................................................................................. 36

*Phila. B .& W.R. Co. v. Quaker C.F.M. Co.*,
   127 A. 845 (Pa. 1925) ............................................................................................. 2, 16

*Pocono Intern. Raceway v. Pocono Produce, Inc.*,
   468 A.2d 468 (Pa. 1983) .......................................................................................... 16

*Stilwell Value Partners, L.P. v. Prudential Mutual Holding Co.*,
   2007 WL 2345281 (E.D. Pa. Aug. 15, 2007) ......................................................... 26, 32, 33

*Torchia v. Torchia*,
   499 A.2d 581 (Pa. Super. Ct. 1985) .......................................................................... 33

*Viener v. Jacobs*,
   834 A.2d 546 (Pa. Super. Ct. 2003) ....................................................................... 26, 27

*Weisbecker v. Hosiery Patents, Inc.*,
   51 A.2d 811 (Pa. 1947) ............................................................................................ 26

## FEDERAL STATUTES

Fed. R. Civ. P. 12.................................................................................................14

Fed. R. Civ. P. 14.................................................................................................27

## STATE STATUTES

42 Pa. C.S.A. § 5524(7) ........................................................................................15

15 Pa. C.S.A § 1571, *et seq* ........................................................22, 23, 24, 25, 36

15 Pa. C.S.A § 1572 ............................................................................................23

15 Pa. C.S.A. § 1782.2 ...................................................................................28, 29

## I.     INTRODUCTION

Plaintiff Mitchell Partners, L.P. ("Plaintiff" or "Mitchell Partners") submits this opposition to the *Motion to Dismiss Plaintiff's Complaint, or In the Alternative, to Stay the Action* filed by the defendants in this Action.[1]

In their motion, Defendants, whether by design or miscomprehension, consistently misrepresent the essential nature of Plaintiff's tort claims to support their mistaken argument that the parallel appraisal proceeding, which was initiated *by Irex* and is currently pending in Pennsylvania state court, supplies the sole remedy for those tort claims. This is clearly untrue. Pennsylvania law unquestionably confers Plaintiff with standing to bring direct claims in this Court against Defendants who, as the controlling shareholder group, owed distinct fiduciary duties directly to Plaintiff and the other minority shareholders. Indeed, it is completely illogical to argue that an appraisal proceeding where neither North Lime nor any of the Insider Director/Officer Defendants is a party constitutes the exclusive forum for adjudicating Plaintiff's claims of fiduciary misfeasance.

Defendants also interpose a limitations argument that completely ignores the fundamental principle of Pennsylvania law holding that a cause of action does not accrue until a claimant has the right to institute a lawsuit. As established by the prevailing case law, a shareholder is not harmed by an unfair transaction until the transaction is consummated; thus, it was not until the contrived freeze-out merger was approved and Plaintiff deprived of its Irex

---

[1] Defendants are Irex Corporation, North Lime Holdings Corporation ("North Lime"), W. Kirk Liddell ("Liddell"), David C. Kleinman, Paul J. Isaac, Joann M. Judge, Michael J. Lardner, John O. Shirk, Thomas W. Wolf, Lori A. Pickell, James E. Hipolit (as a group, the "Insider Director/Officer Defendants" or "IDOD"), Jane E. Pinkerton, Kenneth G. Stoudt, and N. Thompson Washburn (as a group, the "Additional Directors" or "Special Committee"). Collectively, all defendants are referred to as the "Defendants."

stock, on October 10, 2006, that Plaintiff's claims accrued.  Having commenced this Action on October 8, 2008, Plaintiff's claims are timely.

Given that Plaintiff's claims are timely and arise independently from the parallel appraisal proceeding initiated by Irex, Defendants' tepid remaining arguments fall flat and the Court should deny this motion in its entirety.

## II.       THE FACTS ALLEGED IN PLAINTIFF'S COMPLAINT

At all times material to the allegations in the Complaint, Mitchell Partners, L.P. has owned, or been the beneficial owner of, more than 11,000 shares of Irex common stock. Compl. ¶ 4.

As early as November 2005, defendant Liddell, the chairman, president, and chief executive officer of Irex, began discussions with other Irex board members regarding a possible merger that would merge Irex into a subsidiary of a newly-formed entity (*i.e.,* North Lime) and cash-out those shareholders, like Plaintiff, excluded from participating as shareholders in North Lime (the "Transaction").  Compl. ¶¶ 32-33, 37, 43; *see* Proxy Statement (attached as Exhibit 1 to *Defendants' Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, to Stay the Action* (Defs.' Mot. to Dismiss)) at 9-10.[2]  From the outset of these discussions, the form of the Transaction contemplated that only executive officers, directors and certain larger affiliated shareholders of Irex would participate as shareholders in North Lime such that the merger

_____

[2] As Defendants note in their brief, the Court may properly consider documents referenced in the Complaint, matters of which the Court may take judicial notice, and documents integral to the Complaint without converting the pending Motion into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007).  Plaintiff agrees that the Proxy Statement represents such a document for purposes of this Motion.  Since Defendants have included the Proxy Statement as part of the compendium of exhibits submitted with their Motion, Plaintiff will, in an effort to spare the Court the burden of multiple copies, simply refer to it using the exhibit number (Exhibit 1) assigned by Defendants.

New Master) _1                                    2

presented a conflict of interest between the IDOD and those Irex shareholders, like Plaintiff, who would be squeezed out in the merger. *Id.*

In April 2006, defendant Liddell circulated a memorandum to the Irex Board of Directors ("Board") describing his plan (the "North Lime Proposal") to orchestrate the Transaction and squeeze out the non-participating shareholders ("Non-Participating Shareholders") of Irex. Compl. ¶ 32. As a component of that plan, Liddell and the other IDOD organized North Lime to serve as the post-acquisition holding company parent of Irex. *Id.* at ¶¶ 6, 32-33. Under Liddell's plan, North Lime would be structured as an "S" corporation to reduce the level of corporate taxes and create greater earning opportunities – but only for those members of the majority control group who continued with him as shareholders after the Transaction. *Id.* at ¶ 33.

Defendant Liddell's plan contemplated a significantly reduced investor base of stockholders who would share in the benefits of his plan, and that reduction was to be accomplished by freezing out Plaintiff and the members of the Class and limiting participation in the Transaction solely to the IDOD and certain other affiliated "substantial" shareholders of Irex (collectively, the group comprised of the IDOD and these larger affiliated shareholders of Irex who would continue to participate as shareholders in North Lime is referred to as the "Controlling Shareholder Group"). Compl. ¶¶ 33, 43; *see* Proxy Statement (Exhibit 1) at 6 ("[North Lime was] recently formed by a group of executive officers, directors and certain larger shareholders of Irex for the purpose of entering into the [Transaction] and acquiring Irex.") and 8 (As of the date of the special meeting [to vote on the Transaction], [North Lime] is expected to hold proxies to vote 289,000 shares, or approximately 71% of the outstanding common shares . . . in favor of the [Transaction]."). Under the North Lime Proposal, the Non-Participating

Shareholders would be eliminated and paid $60 per share for their Irex common stock. *Id.* at ¶ 34.[3]

Once North Lime was formed, and throughout the initial formulation and early implementation of the North Lime Proposal, every member of the Irex Board and every senior Irex executive officer served in dual capacities for both Irex and North Lime, and were conflicted by interests in the North Lime Proposal that were adverse to the shareholders, like Plaintiff and the proposed Class members, who would be squeezed out in the proposed merger. Compl. ¶ 37. On May 15, 2006, while every member of the Irex board operated under a conflict of interest with respect to the Transaction, the IDOD mailed a letter to Irex shareholders advising of the proposed Transaction at a price of $60 per share. Compl. ¶34. Thereafter, on or about May 31, 2006, a special meeting of the Board was convened "so that we [the Board] can take action" on issues related to "*our* North Lime Proposal." *Id.* at ¶ 36. Not until this May 31, 2006 meeting, two weeks *after* the IDOD had already told Irex shareholders of the proposed cash-out price of $60 per share, did the Board act to amend Irex's corporate bylaws to add additional directors to form a special committee (the "Special Committee") of purportedly disinterested directors to review the North Lime Proposal in an effort to inoculate the Transaction from challenges arising from the obvious conflicts of interest inherent in the North Lime Proposal. *Id.* at ¶¶ 34, 36-37.

The Special Committee was ostensibly charged with the independent responsibility of "negotiating" with North Lime regarding the price to be paid for the Irex stock held by Non-Participating Shareholders because every other remaining member of the Board was an insider with an admitted conflict of interest as to those shareholders, like Plaintiff, who were

---

[3] Under the North Lime Proposal, Irex's *preferred* shareholders, all of whom happened to be the Insider Director/Officer Defendants and/or their family members, would be unaffected by the Transaction and would continue to own their Irex stock. Compl. ¶ 2.

being squeezed out in the Transaction.  Compl. ¶ 49.  But the Special Committee was a stacked

deck – the Controlling Shareholder Group, acting through the IDOD, appointed a former Irex

director, Irex's former chief financial officer, and a local businessman whose company provided

services to one or more of the defendants or their affiliates[4] – operating within price confines

(*i.e.,* a range of $60 per share) already set by the Controlling Shareholder Group, and so

concerned with its own potential liability that one of the first official acts of the newly-minted

Special Committee was to request an amendment of the Irex bylaws to secure for themselves the

maximum indemnification from liability permitted under the law.  *Id.* at ¶¶ 46, 50.[5]  This was

promptly approved by the Board.  *Id.*

     The principal issue facing the Special Committee was deciding whether the price

offered to Plaintiff and the other "non-participating" shareholders in the Transaction constituted

fair value for their Irex shares.  Compl. ¶ 48.  As it examined this issue, however, the Controlling

Shareholder Group was determined to have the Special Committee's analysis tinted by the

IDOD's tendentious assessment of the impact of the AC&S bankruptcy[6] on the value of Irex's

stock.

     AC&S, Inc., ("AC&S") an Irex subsidiary, had filed for bankruptcy protection in

2002 under the stress of approximately 100,000 unresolved litigation claims.  Compl. ¶ 39.

Some two years prior to the bankruptcy filing, AC&S had initiated litigation of its own against

its insurer, Travelers Indemnity Company and certain affiliates ("Travelers"), to pursue

---

[4] These would be, respectively, defendants Washburn, Pinkerton, and Stoudt, who are identified
in the Complaint as the "Additional Defendants."  Compl. ¶¶ 2, 16-18, 46.
[5] On or around June 12, 2006, the Board acted to protect itself from any fallout attendant to its
self-interested Transaction (and the Special Committee from any fallout associated with blessing
it) by adopting a provision "designed to increase the protection for directors against liability for
change of control transactions" – like the North Lime Proposal.  Compl. ¶ 45.

insurance coverage for some or all of the asbestos claims pending against AC&S. *Id.* at ¶ 40. By

the summer of 2006, as the Controlling Shareholder Group pushed the Transaction towards

consummation and formed the Special Committee to approve it, the IDOD knew, or had reason

to know, that the litigation between AC&S and Travelers was likely to be resolved by settlement

in a manner highly favorable to AC&S with a concomitantly beneficial impact on the value of

Irex and its common stock. *Id.* at ¶¶ 41-42.

The Special Committee spent a single day, July 6, 2006, ruminating over

candidates for the role of financial advisor before selecting Curtis Financial Group ("Curtis") to

provide the Special Committee with a fairness opinion regarding the Transaction. Compl. ¶ 52.

Thereafter, over the course of the next six weeks, Curtis processed financial information

provided by Irex, but that information did not include a report or assessment of the ongoing

settlement negotiations with Travelers regarding the AC&S asbestos liability. *Id.* at ¶ 53.

Further, although Curtis eventually met with Snyder & Co. ("Snyder"), the investment banking

firm that had historically provided annual appraisals of Irex common stock for purposes of

valuing the holdings of the Irex employees' 401(k) plan, Curtis's meeting occurred only *after* the

Special Committee already had met separately with both Snyder and defendant Liddell. *Id.*

Indeed, defendant Liddell was noticeably ubiquitous in his effort to influence and

shape the Special Committee's perception of the Transaction. He insisted on meeting with the

Special Committee *prior* to its meeting with Snyder while knowing that Snyder was already

serving as an advisor to North Lime with respect to the Transaction at precisely the same time

that the Special Committee was seeking Snyder's counsel as to the fair value of Irex's common

---

[6] The "AC&S Bankruptcy" refers to the 2002 bankruptcy filing by AC&S, Inc., a subsidiary of
Irex. Compl. ¶ 39.

stock. Compl. ¶ 54.[7] Having secured an audience with the Special Committee before its meeting

with Snyder, defendant Liddell then personally attended the Special Committee meeting with

Snyder (but without Curtis, the Special Committee's chosen financial advisor) to discuss the

valuation of Irex stock in connection with the Transaction. *Id.* at ¶ 56. Throughout the Special

Committee's work in the summer of 2006, defendant Liddell importuned the members regarding

the importance of applying an "asbestos discount" in valuing Irex's stock – a discount ostensibly

reflecting the risk facing Irex as a result of the asbestos claims pending against AC&S. *Id.*

Liddell told the Special Committee that this asbestos liability risk represented the single most

significant factor impacting the value of Irex stock in the Transaction. *Id.*

   In performing its analysis, Curtis (and, concomitantly, the Special Committee)

relied principally upon the financial and other information (including information furnished

orally by Irex management) and the accompanying assurances of accuracy, provided by Irex

which, in turn, functioned under the direction and control of the IDOD. Curtis made no effort to

verify this information nor did it undertake any independent evaluation or appraisal of the assets

and liabilities of Irex, including any liability relating to the AC&S asbestos claims. Compl. ¶ 60.

The IDOD, who had a clear financial motive to undervalue Irex's common stock, took a

misleadingly conservative approach that understated the value of the company and,

correspondingly, served to depress any per share value that Curtis would derive from the Irex-

furnished projections. *Id.* at ¶ 61. In particular, the projections provided to Curtis at the

direction of the IDOD used assumptions that were inconsistent with Irex's historical growth

---

[7] Notably, North Lime also had secured its legal representation for the Transaction from the
Barley Snyder law firm that had served previously for years as Irex's corporate counsel. Compl.
¶ 55.

trends, understated Irex's future revenue growth, and applied an excessive asbestos discount – which, collectively, produced an unfairly parsimonious value for Irex's stock. *Id.* at ¶¶ 60-63.

Not surprisingly given that its analysis was grounded on the IDOD's misleading projections, Curtis's own initial valuation of $65-$67 per share substantially undervalued Irex's stock; but, even this early conclusion as to value convinced the Special Committee that the North Lime Proposal of $60 per share was inadequate, and defendant Liddell was so informed. Compl. ¶ 64. Inexplicably, however, rather than awaiting a new offer from North Lime, the Special Committee suggested a price of $67 per share and, thereby, set an arbitrary ceiling on the negotiations insuring that any value paid to Non-Participating Shareholders for their Irex shares would barely exceed North Lime's original exiguous proposal by 10%. *Id.*

With the Special Committee's "negotiating" position now completely circumscribed, it took only 10 days for defendant Liddell and the IDODs to have the Special Committee capitulate at $66 per share. Compl. ¶ 67. It was the omnipresent Liddell who, now purporting to speak for the ostensibly "independent" Special Committee, wrote to the Board requesting a meeting as soon as possible to "act on the [Special] Committee's recommendation and to announce a decision to all shareholders." *Id.* at ¶ 69. For Liddell, the IDOD, and the other members of the Controlling Shareholder Group, the result was tantamount to a financial *coup d'état.*

On August 31, 2006, Irex and North Lime entered into a merger agreement, subject to shareholder approval, documenting the terms and conditions of the Transaction which included payment to Non-Participating Shareholders at $66 per share. Compl. ¶ 70. To secure that approval, defendants prepared a proxy statement ("Proxy Statement") and disseminated it to all shareholders in September 2006, advising that both the Special Committee and the Board

recommended a vote "for" the Transaction. *Id.* at ¶¶ 71-72. For non-participating shareholders

like Plaintiff and the members of the proposed Class, approval of the Transaction was an empty

formality since the Proxy Statement advised shareholders that North Lime[8] *held proxies for*

*approximately 71% of the outstanding shares of Irex common stock*, and intended to vote all of

the shares for which it held a proxy in favor of the Transaction. Exhibit 1 (Proxy Statement) at

8. While the IDODs could have structured the Transaction to require approval by a majority of

the Non-Participating Shareholders (*i.e.,* a "majority of the minority"), they chose not to do so.

Compl. ¶ 79.

   Although the Special Committee's *raison d'être* was assuring the fairness of the

Transaction to Plaintiff and the other Non-Participating Shareholders, its endorsement of the

Transaction as presented in the Proxy Statement described it as "fair to the Non-Participating

Shareholders *and in the best interests of Irex,"* even though the "interests of Irex" were

controlled by the IDODs and were in direct conflict with the interests of Plaintiff and the

proposed Class. *Id.* at ¶ 73.

   Compounding the Defendants' fiduciary misfeasance, the Proxy Statement issued

by the IDOD on behalf of the Controlling Shareholder Group is false and misleading, and fails to

make material disclosures regarding the Transaction. Compl. ¶¶ 74-78. The Complaint alleges

that the Proxy Statement, *inter alia*: (1) omits material facts concerning Curtis's valuation

analysis and the fairness opinion predicated thereon; (2) omits the Irex internal management

projections used by Curtis which were prepared under the direction and control of the IDODs

and were never independently verified by Curtis; (3) omits supplying any of the factors that the

---

[8] North Lime, of course, was the Trojan horse organized by the Controlling Shareholder Group
for the purpose of acquiring Irex. Exhibit 1 (Proxy Statement) at 1.

Board acknowledged "may weigh against" the Transaction;[9] (4) falsely describes the Transaction as "substantively and procedurally fair to Non-Participating Shareholders" when, as the IDODs then knew, the Transaction Consideration[10] of $66 per share was substantially less than the fair value of Irex common stock, and (5) misrepresents material facts concerning the status of the litigation between AC&S and Travelers and omits material facts concerning the impact that resolution of that litigation would have on the value of Irex common stock. *Id.* at ¶78.

More specifically with respect to the last-mentioned allegation, the Complaint charges that the Proxy Statement provides no description or analysis of the AC&S litigation with Travelers or of the status of the settlement negotiations between those parties; instead, a description of a proposed AC&S /Travelers settlement is buried in a lengthy note to a section of the Proxy Statement titled "Financial Information" included as an appendix ("C") to the Proxy Statement, but Plaintiff and other Non-Participating Shareholders are told that confirmation of any AC&S reorganization plan is "uncertain" and that the AC&S bankruptcy litigation "remains unresolved." Compl. ¶75.

As the IDOD knew, the Proxy Statement's skepticism regarding the outcome of the AC&S litigation and bankruptcy was unwarranted.  Only a few months after the Transaction was approved with the help of North Lime's proxies, defendant Liddell announced that AC&S had, indeed, settled its litigation with Travelers on terms virtually identical to those described in the Proxy Statement as "uncertain" – terms that included Travelers paying $449 million towards

---

[9] *See* Exhibit 1 (Proxy Statement) at 14 ("The foregoing discussion addresses the material information and some of the factors considered by the Board of Directors of Irex in its consideration of the Merger, including factors that support the Merger *as well as those that may weigh against it.*" (emphasis added)).
[10] Unless otherwise indicated, capitalized terms have the same meaning as accorded those terms in the Proxy Statement.

the resolution of AC&S's asbestos claims – terms that defendant Liddell described to the local press as "good news for AC&S." Compl. ¶ 76.

Although the terms of the AC&S/Travelers settlement were good news for AC&S and for the Controlling Shareholder Group, for Plaintiff and the squeezed-out Non-Participating Shareholders the news was considerably more bitter.  Relying on the IDOD's misleading performance projections and their assertion of uncertainty regarding the AC&S litigation, Curtis had discounted the value of the Non-Participating Shareholders' Irex stock by 22.5%, and the Special Committee had acquiesced in this unwarranted discount to endorse a share price that was substantially less than the actual fair value of Irex's common stock at the time of the Transaction.  Compl. ¶¶ 61-69.  Having silenced the Proxy Statement regarding the true state of the AC&S/Travelers litigation, and tainted the Special Committee's recommendation and Curtis's fairness opinion with their misleading projections and financial data, the IDOD completed their self-interested "North Lime Proposal" by voting their majority interest uniformly in favor of the Transaction – in complete derogation of their fiduciary duties to Plaintiff and the Class members.  On October 20, 2006, ten days after the unfair Transaction was approved by a special shareholder meeting, the Transaction closed.  *Id.* ¶ 83.

On October 8, 2008, Plaintiff commenced this Action, less than two years from the date on which the Transaction was approved.

**III.    STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*,

868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273

(3d Cir.1985)). The moving party has the burden of proving that no claim has been stated. *In re*

*Loranger Manufacturing Corp.*, 324 B.R. 575, 577 (W.D. Pa. B.R. 2005) (citing *Conley v.*

*Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A court may dismiss the complaint

only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004)

(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). While it is true, as Defendants

insist, that the Court is also entitled to consider documents specifically incorporated into the

Complaint by reference as well as matters susceptible to judicial notice, *see Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007), the court's standard of review

continues to warrant dismissal only if it is clear that plaintiff's claims are not sustainable under

any set of provable facts. Here, accepting all of the allegations in the Complaint as true and

drawing every reasonable inference in favor of Plaintiff, Defendants' motion must

unquestionably be denied.

## LEGAL ARGUMENT

### IV.    PLAINTIFF'S CLAIMS ARE TIMELY

Plaintiff agrees that Pennsylvania's two-year statute of limitations period is

applicable to each of Plaintiff's tort claims for breach of fiduciary, aiding and abetting the

breaches of fiduciary duty, and unjust enrichment. *See* Defs.' Mot. to Dismiss at 12. *See also*

*Maillie v. Greater Delaware Valley Health Care, Inc.*, 628 A.2d 528 (Pa. Cmmw. Ct. 1993),

*appeal denied*, 644 A.2d 1204 (Pa. 1994), ("The statute of limitations under Pennsylvania law

for claims of breach of fiduciary duty is two years."); 42 Pa. C.S.A. § 5524(7) (2-year limitations

period applies to personal injury actions founded upon negligent, intentional or otherwise

tortious conduct or any other action or proceeding sounding in trespass, including deceit or

fraud).  The parties dispute, however, the date on which the limitations period began to run.

       In Pennsylvania, the statute of limitations does not begin to run until the right to

institute and maintain a lawsuit arises.  *Pocono Intern. Raceway v. Pocono Produce, Inc.,* 468

A.2d 468, 471 (Pa. 1983).  As the Third Circuit has stated, "[i]t is a rule of general application

that a cause of action accrues for limitation purposes only when it could be prosecuted to a

successful conclusion."  *Kucera v. Met. Life Ins. Co.,* 719 F.2d 678, 681 (3d Cir. 1983).  "The

rule in Pennsylvania is no different than elsewhere . . . a cause of action accrues . . . when one

has the right to institute suit."  *Id.* (citing *Bell v. Brady,* 31 A.2d 547, 549 (Pa. 1943)); *see also*

*Dombrowski v. Gould Electronics, Inc.*, 954 F. Supp. 1006, 1010 (M.D. Pa. 1996) ("[t]he true

test in determining when a cause of action arises or accrues is to establish the time when the

plaintiff could have first maintained the action to a successful conclusion"); *Phila. B .& W.R. Co.*

*v. Quaker C.F.M. Co.,* 127 A. 845, 847 (Pa. 1925) ("A cause of action accrues at the moment the

party has the legal right to sue.").

       These principles of limitations are inextricably intertwined with the concept of

standing.  Since, under Pennsylvania law, a limitations period will not commence until a

claimant has a "right to institute suit," *Kucera v. Met. Life Ins. Co.,* 719 F.2d at 681 citing *Bell v.*

*Brady,* 31 A.2d 547, 549 (Pa. 1943), it is apodictic that a plaintiff must have standing to sue

before any limitations period can begin to run.[11]

---

[11] Nowhere is the error of Defendants' limitations approach more apparent than in their
misguided effort to contort the "discovery" rule into a bar to Plaintiff's claims.  In certain
circumstances, Pennsylvania law permits the statute of limitations to be tolled until "plaintiff
knows, or in the exercise of reasonable diligence should have known, (1) that he has been
injured, and (2) that his injury has been caused by another's conduct."  *Brennen v. Wachovia*,
2004 WL 2988520 (E.D. Pa. Dec. 20, 2004) (*quoting Barnes v. American Tobacco Co.*, 161 F.3d
127, 136 (3d Cir. 1998).  This "discovery" rule, and the associated jurisprudence governing when

The concept of standing is based on the notion that an individual must establish, as a prerequisite to obtaining judicial resolution of a suit (or, stated differently, before having the "right to institute suit"), that he or she is aggrieved by the challenged action. *Empire Coal Min. & Development, Inc. v. Dept. of Environmental Resources,* 623 A.2d 897, 899 (Pa. Cmmw. Ct.), *app. denied,* 629 A.2d 1384 (Pa. 1993). To have standing, a party must show that it has a direct interest in the subject matter of the particular dispute and that its interest was harmed by the challenged action. *Id.* The harm must be actual, not speculative or intangible, because standing requires that a litigant be "aggrieved" or "adversely affected in some way by the matter he seeks to challenge . . . [so as to have] standing to obtain a judicial resolution." *Maillie,* 628 A.2d at 591 (quoting *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 346 A.2d 269, 286 (Pa. 1975)) (holding class lacked standing to pursue tort claims because "[t]here is no contrary evidence within the record to indicate that the class members suffered *any* harm, let alone immediate harm" from the transaction (emphasis in original)).

Defendants completely ignore this interplay between standing and the statute of limitations, and the corresponding Pennsylvania case law holding that the statute of limitations does not begin to run on claims arising from the occurrence of an event until that event has, in fact, occurred. Not surprisingly, given this fundamental oversight, Defendants' limitations argument as to each of Plaintiff's state law claims is baseless.

---

a claimant has the requisite notice to "discover" his injury and commence the running of the limitations period, necessarily applies only where a claim has accrued; it being apparent that no tolling is necessary where the statute has not yet begun to run. But, the concepts of "inquiry notice" and "discovery" are completely inapposite where, as here, Plaintiff has suffered no injury, has no standing, and could maintain no lawsuit until deprived of its Irex stock through approval of the Transaction by shareholder vote.

A.   **Shareholder Approval Of The Transaction On October 10, 2006 Starts The Running Of The Statute Of Limitations On Plaintiff's Breach Of Fiduciary Duty Claims**

"Generally, the statute of limitations begins to run on a breach of fiduciary duty claim when the trustee *openly and unequivocally violates* his duties." *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (emphasis added) (holding plaintiffs' claims accrued on the date their invoices became overdue because it evidenced "the time the trustee openly repeduiat[ed] those [fiduciary] duties"). In the corporate context, as in this Action, it is the actual consummation of the unfair transaction orchestrated or effectuated by a fiduciary officer, director, or controlling shareholder, and not merely preliminary communications preceding that transaction, that represents the actionable breach of fiduciary duty and confers standing for the aggrieved to vindicate his rights. Thus, in Pennsylvania and elsewhere within this Circuit, courts have consistently held that the statute of limitations on state law claims arising out of a harmful transaction begin to accrue on the date the transaction was approved. *See e.g., In re Loranger Manufacturing Corp.*, 324 B.R. 575, 579-80 (W.D. Pa. B.R. 2005); *Bren v. Capital Reality Group Sr. Housing, Inc.*, 2004 WL 370214, *4-6 (Del. Ch. Feb. 27, 2004).

For example, in the factually similar case of *Dofflemyer v. W.F. Hall Printing Co.*, 558 F.Supp. 372 (D. Del. 1983), the plaintiff shareholders brought, *inter alia*, a breach of fiduciary duty claim against the majority shareholders and board of directors for "consummate[ing] an unfair merger by (1) obtain[ing] an investment opinion of a banking firm they knew was not independent; (2) maneuver[ing] to avoid an 80 percent 'supermajority' provision in the by-laws; and (3) issu[ing] a proxy statement which was false and misleading." *Id.* at 376, 379. Defendants moved to dismiss on several theories including that the breach of fiduciary duty claim was untimely; but, the *Dofflemyer* court recognized that the plaintiff shareholders "could not have sued for damages until the merger was actually accomplished --

*until that time, they had suffered no injury by the defendants' acts*." *Id.* at 379 (emphasis added). The court found that neither plaintiffs' receipt of the "proxy statement detailing the proposed merger" nor their subsequent letter "object[ing] to the merger and demand[ing] an appraisal of the value of their shares," both of which occurred prior to the shareholder vote to approve the merger, served to start the statute of limitations on plaintiff's breach of fiduciary duty claim because, as the court stated, they were not harmed *until* "the merger was effected." *Id.* at 375 (providing factual recitation), 379 (analyzing statute of limitations).[12]

Contrary to this logically compelling law, Defendants insist that the statute of limitations for Plaintiff's breach of fiduciary duty claim (and each of its other claims, *see infra* Part IV.B-C) began to run well before the Transaction was concluded – they suggest either May 15, 2006 (when Plaintiff received a letter from Irex informing it and the other minority Irex shareholders that the Irex Board was *contemplating* a *proposed* merger transaction at $60 per share cash for each outstanding share of Irex common stock) or September 11, 2006 (when Plaintiff was mailed the Proxy Statement for the still-inchoate Transaction). Compl. ¶¶ 34, 72. But this position is both legally unsustainable and logically counterintuitive since, at neither point in time, had Plaintiff suffered any harm or injury relating to its Irex stock, and all of its rights of ownership accompanying that stock remained unimpaired. Only upon approval of the

---

[12] A similar conclusion was reached in *National Forge Co. v. Official Committee of Unsecured Creditors of National Forge Co.*, 344 B.R. 340 (W.D. Pa. 2006), where the plaintiff claimed, *inter alia*, that the director defendants breached their fiduciary duties by effecting an unfair stock redemption transaction to eliminate the Class B shareholders and convert the company to a Subchapter S corporation. *Id.* at 371-79. The court found that the breach of fiduciary duty claims accrued only upon completion of the redemption transaction. *Id. See, also,* 51 Am. Jur. 2d, Limitation of Actions § 127 (1970) ("If a right of action depends upon some contingency or a condition precedent, the cause of action does not accrue and the statute of limitations does not begin to run until that contingency occurs or the condition precedent is complied with."); 54 C.J.S., Limitation of Actions § 110 (1948) ("Where a party's right depends on the happening of

Transaction, on October 10, 2006, was Plaintiff harmed by the unfair Transaction that

Defendants orchestrated and approved with their controlling voting power, and only upon

suffering this injury-in-fact did Plaintiff have the right to institute suit serving to commence the

running of the statute of limitations.  Accordingly, Plaintiff's breach of fiduciary claims found in

Counts I and II of the Complaint are timely.[13]

---

an event in the future, the cause of action accrues, and the statute of limitations begins to run, only at the time when the event happens.").

[13] Upon examination, Defendants' citations on limitations simply fail to support their arguments. Each of the cited cases is inapposite because the argued "notice" occurs only well *after* the harm had occurred and the right to institute suit had accrued.  *See e.g.*, *Weis-Buy Services, Inc. v. Paglia*, 411 F.3d 415,  422-24 (3d Cir. 2005) (rejecting plaintiff's argument that it was not put on notice of defendant's breach of fiduciary duty until, through bankruptcy proceedings, it learned that defendant's "assets were insufficient to satisfy liability" because plaintiff was aware of its injury and had been injured more than two years prior when defendant *first failed* to pay the outstanding invoices); *Ciccarelli v. Gichner Systems Group, Inc.*, 862 F. Supp. 1293, 1301 (M.D. Pa. 1994) (holding counterclaims for fraudulent misrepresentation, fraud, breach of fiduciary duties, and negligence were time-barred because defendant had notice of injury for more than two years by virtue of a government agency report informing defendant that plaintiffs had engaged in "potential defective pricing" leading defendant's own counsel to conclude that "false labor reports had been created by plaintiffs with respect to the Raytheon/Patriot missile contracts").

Defendants also point to a series of cases discussing the effect of "storm warnings" in providing inquiry notice sufficient to trigger the statute of limitations for claims arising under the federal securities laws.  However, as the court observed in *In re Phar-Mor, Inc. Securities Litig.*, 892 F. Supp. 676 (W.D. Pa. 1995), one of Defendants' own citations, the limitations period for a § 10(b) claim is uniquely timed to the *sine qua non* of that claim, *i.e.,* the alleged misrepresentation or omission, as opposed to the accrual of a cause of action.  In the words of the *Phar-Mor* court, the "[Supreme] Court's recognition of the distinction between 'violation' and 'cause of action' and its adoption of the former leads us to conclude that the court intended that the triggering event for the running of the [§10(b)] limitations period is the making of the alleged misrepresentation, *and not the accrual of the cause of action.*"  *Id.* at 687 (emphasis added). This analysis, of course, has no application to the claims alleged in Plaintiff's Complaint where Pennsylvania law prescribes that the statute of limitations commences only when those claims can "be prosecuted to a successful conclusion."  *Kucera v. Met. Life Ins. Co.,* 719 F.2d at 681. *See also Herskowitz v. Nutri/Systems, Inc.,* 857 F.2d 179, 185 (3d Cir. 1988) (recognizing distinction that "[t]he gravamen of the federal [securities] claims, for liability purposes, is inadequate disclosures [while] [t]he gravamen of the state law [breach of fiduciary duty] claim pressed by stockholders is unfair consideration resulting from self-dealing by fiduciaries.").

**B.      Plaintiff's Unjust Enrichment Claims Did Not Accrue Until Plaintiff Was Harmed By Defendants' Breach Of Fiduciary Duty**

As discussed above, Pennsylvania's two-year statute of limitations on a tort claim, such as unjust enrichment, does not commence until the litigant is actually harmed and has the right to institute a lawsuit.  In its Complaint, Plaintiff alleges that the IDOD, Irex, and North Lime were unjustly enriched by the financial benefits derived from the breach of their fiduciary duties to orchestrate the Transaction.  Compl. at ¶¶ 96-98 (Count III).  The commencement of the statute of limitations for this unjust enrichment claim is governed by the same accrual principles that are discussed at length in Part IV.A; *i.e.,* the statute does not begin to run until such time as Plaintiff's claim can "be prosecuted to a successful conclusion."  *Kucera v. Met. Life Ins. Co.,* 719 F.2d at 681.  Logic, and the law, dictate that the limitations period cannot commence until the completion of the Transaction presents North Lime, Irex, and the IDOD the unjust enrichment afforded by acquiring the stock of Plaintiff and the other Non-Participating Shareholders at less than fair value.  Accordingly, Plaintiff's unjust enrichment claim is timely.

**C.      Plaintiff's Claim Of Aiding And Abetting Against the Additional Defendants Accrues Concurrently With Plaintiff's Breach Of Fiduciary Duty Claim**

As an alternative basis of liability to its breach of fiduciary duty claim asserted against the Additional Defendants, Plaintiff also alleges (in Count II) that the Additional Defendants aided and abetted the breach of fiduciary duty by the other Defendants as alleged in Court I of the Complaint.  *See* Compl. at ¶¶ 91-95 (Count II).  The "three elements of a cause of action for aiding and abetting a breach of a fiduciary duty under Pennsylvania law are: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach." *Reis v. Barley, Snyder, Senft & Cohen LLC*, 484 F.Supp.2d 337, 350-51 (E.D. Pa. 2007)

(Gardner, J.) (sustaining the claim of aiding and abetting a breach of fiduciary duty on grounds it is likely that Pennsylvania Supreme Court will recognize such a claim while citing to the reasoning in *Koken v. Steinberg,* 825 A.2d 723 (Pa. Cmmw. Ct. 2003)). Implicit as a necessary predicate in the elemental structure of the aiding and abetting claim is the existence of an actionable breach of fiduciary duty; *a fortiori* the statute of limitations cannot commence on aiding and abetting a breach of fiduciary duty until the underlying breach of fiduciary duty claim, itself, has accrued. As demonstrated above, *see supra* Part IV.A., Plaintiff's breach of fiduciary duty claim did not accrue until the Transaction was approved by shareholder vote on October 10, 2008; thus, the aiding and abetting claim, too, is timely.

### V.   AN APPRAISAL PROCEEDING PROVIDES AN EQUITABLE VALUATION REMEDY THAT DOES NOT PREEMPT PLAINTIFF'S TORT CLAIMS AGAINST THE MAJORITY SHAREHOLDERS

The Third Circuit has unequivocally stated that "it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action." *Herskowitz v. Nutri/System, Inc.*, 857 F.2d at 187 (citing *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 532 (Pa. Super. 1984)). In finding that the statutory appraisal remedy is *not* the exclusive remedy for a shareholder who challenges the unfair price and process by which a board of directors or controlling majority shareholders effectuate a merger, the Third Circuit pointedly elaborated:

> Indeed no other rule makes sense, for the appraisal remedy is available even absent misconduct of corporate officials. *It was hardly enacted to provide a shield for such misconduct.*

*Herskowitz*, 857 F.2d at 186-187 (emphasis added).

Pennsylvania's Business Corporation Law ("BCL") provisions support this conclusion. The *only relief* an appraisal proceeding affords a shareholder is payment *from the corporation* of fair value for the shareholder's stock in the corporation. *See* 15 Pa. C.S.A.,

Subchapter D ("Dissenters Rights") § 1571, *et seq.*  Section 1572 provides the definitions for the

Dissenters Rights subchapter of the BCL, and specifically identifies the permitted parties to an

appraisal proceeding:

> **"Corporation."** The issuer of the shares held or owned by the
> dissenter before the corporate action or the successor by merger,
> consolidation, division, conversion or otherwise of that issuer. A
> plan of division may designate which one or more of the resulting
> corporations is the successor corporation for the purposes of this
> subchapter. *The designated successor corporation or corporations
> in a division shall have sole responsibility for payments to
> dissenters* and other liabilities under this subchapter except as
> otherwise provided in the plan of division.
>
> **"Dissenter."** *A shareholder* who is entitled to and does assert
> dissenters rights under this subchapter and who has performed
> every act required up to the time involved for the assertion of those
> rights.

15 Pa. C.S.A. § 1572 (emphasis added).  No reading of the Dissenters Rights subchapter of the

BCL supports a finding that a shareholder's common law claims against controlling majority

shareholder(s) are either extinguished or remedied by an appraisal proceeding particularly since

the damages recoverable by a minority shareholder for a breach of fiduciary duty by the majority

do not mirror the fair value determination.  As the *Dofflemyer* court recognized:

> [T]he damages would presumably be the difference between what
> plaintiffs received in the appraisal action and what they would
> have received if there had been no wrongdoing. While it is too
> early in the game to decide precisely what an analysis of the
> damage issues will entail, it is likely that a determination of the
> value of what plaintiffs would have received absent any
> wrongdoing will involve different factors than those considered by
> the Court of Chancery in determining the appraised value of the
> plaintiffs' stock . . . .

*Dofflemyer*, 558 F. Supp. at 381 (rejecting defendant's argument that fair value paid to

shareholders in the appraisal proceeding also satisfied plaintiff's breach of fiduciary duty

claims).

Indeed, the clarity of the distinction drawn in the BCL and the relevant case law between appraisal rights and remedies for an unfair transaction is apparently not lost on Defendants, which presumably explains their consistent mischaracterization of Plaintiff's claims. In their papers, Defendants repeatedly circumscribe Plaintiff's Complaint as seeking only "fair value" for Plaintiff's shares while ignoring the distinction between Plaintiff's common law tort claims (*i.e.*, breach of fiduciary duty, aiding and abetting breaches of fiduciary duty, and unjust enrichment), which are predicated on individual misconduct by the Controlling Shareholder Group (aided and abetted by the Additional Defendants), and the "rights" of a dissenting shareholder that are addressed in an appraisal proceeding regardless of the existence of misconduct in effectuating the Transaction. Defs.' Mot. to Dismiss at 17-20. Relying on this mistaken premise, Defendants insist that Plaintiff's active participation in the appraisal proceeding somehow preempts its pursuit, in this Court, of tort claims predicated upon the Controlling Shareholder Group's fiduciary misconduct. It is true that an appraisal proceeding is the exclusive remedy for a shareholder seeking fair value of its shares *from the corporation*, but Plaintiff's Complaint alleges an entirely different basis of liability – claims of fiduciary misfeasance in orchestrating a Transaction that was unfair as to both price *and* process – and *these* claims are distinctly outside the sphere of the appraisal proceeding.[14] *Herskowitz*, 857 F.2d at 186-187. *See also Dofflemyer*, 558 F. Supp. at 381.

---

[14] Sensing the transparency of their arguments, Defendants also urge that Plaintiff squandered its only available relief outside the appraisal context by failing to seek to enjoin the Transaction. It is true that the BCL affords the opportunity for pre-merger injunctive relief (*see* 15 Pa. C.S.A. § 1105), but the statute was never intended to limit minority shareholders to appraisal rights where controlling shareholders breached their fiduciary duties in connection with implementing a merger transaction. Defendants' own citation, *Warden v. McLelland,* 288 F.3d 105 (3d Cir. 2002) is a case where the Third Circuit reversed the dismissal of a breach of trust claim in concluding that plaintiff was not limited solely to appraisal rights. *Id.* at 110, 115-116. Indeed, Defendants implicitly acknowledge their overreaching in note 14 of their brief where they

The claims alleged in the Complaint assert misconduct against North Lime, the IDOD, and the Additional Defendants (in their role as the Special Committee) predicated on a breach of fiduciary duty owed directly to Plaintiff as a minority shareholder – not a duty enjoyed by Plaintiff derivatively as an Irex stockholder generally or a duty owed to the corporation by virtue of defendants' service as corporate directors or officers. Thus, Plaintiff's common law claims are not posed against the corporation *per se*, but against the Controlling Shareholder Group comprised of Irex, the IDOD, and North Lime, and these claims attack both the price *and the process* used by the Controlling Shareholder Group in effectuating the Transaction while seeking relief in the form of compensatory and punitive damages, and disgorgement. Consequently, it is readily apparent that this Action implicates parties, issues, discovery and evidence, and relief that are completely beyond the scope of an appraisal proceeding, where the court is charged solely with the "determination" of the fair value of the dissenter's shares. 15 Pa. C.S.A. §§ 1571(a), 1579(a), (c)-(d).[15]  *See Dofflemyer*, 558 F. Supp. at 381. All of this readily explains why Pennsylvania courts have consistently recognized that the rights of oppressed minority shareholders may be vindicated separately from any of the statutory procedures embodied in the BCL. *Herskowitz v. Nutri/System, Inc.*, 857 F.2d at 187 (citing *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 532 (Pa. Super. 1984)). *See also,* Note 17, *infra.*

---

concede that "some courts have interpreted *In re Jones* as being limited to the jurisdiction of an appraisal court *and not necessarily as precluding other common law actions outside the appraisal context."* Defs. Mot. to Dismiss at 20, n. 14 (emphasis added). Defendants then cite to *Herskowitz* where, of course, the Third Circuit unambiguously announced that "it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action." *Herskowitz v. Nutri/System, Inc.*, 857 F.2d at 187 (citing *In re Jones & Laughlin Steel Corp.*, 477 A.2d 527, 532 (Pa. Super. 1984)).

[15] In fact, in the state court appraisal proceeding, Irex has relied upon the limited jurisdiction of the appraisal proceeding to object to any discovery directed to issues beyond valuation and extending to the fairness of the process of the Transaction. *See, e.g.,* Exhibit A, (Irex's Objections to Third Party Subpoenas).

VI.   **PLAINTIFF, AS A MINORITY SHAREHOLDER, HAS PROPERLY ASSERTED DIRECT CLAIMS AGAINST NORTH LIME, IREX, AND THE INDIVIDUAL DIRECTOR/OFFICER DEFENDANTS WHO, COLLECTIVELY, REPRESENT THE CONTROLLING MAJORITY SHAREHOLDER GROUP**

Defendants persistently seek to infuse Plaintiff's well-plead allegations with unwarranted ambiguity to manufacture misguided standing and jurisdictional arguments for their rambling motion. Defs.' Mot. to Dismiss at 21-30. Plaintiff recognizes that the BCL limits a director's fiduciary duties *qua* a director to the corporation, and precludes a shareholder's assertion of claims for breach of fiduciary duty against a corporation's officers and directors other than derivatively, but the jurisprudence also clearly establishes that:

> [It] has long been recognized that majority shareholders have a duty to protect the interests of the minority ..."*majority stockholders occupy a quasi-fiduciary relation toward the minority* which prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise."

*Stilwell Value Partners, L.P. v. Prudential Mutual Holding Co.*, 2007 WL 2345281, *8 (E.D. Pa. Aug. 15, 2007) (quoting *Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (Pa. 1983) (emphasis added); *Hornsby v. Lohmeyer*, 72 A.2d 294, 298 (Pa.1950)). [16]

---

[16] *See Bair v. Purcell,* 2008 WL 250096, *8 n. 14 (M.D. Pa. Jan. 29, 2008) ("[w]here there is a breach of the fiduciary duty which the directors, officers or majority shareholders owe to a shareholder or the minority shareholders . . . the shareholder injured by such a breach has a direct, personal cause of action"); *Tyler v. O'Neill,* 994 F.Supp. 603, 612 (E.D. Pa. 1998) ("under Pennsylvania law, majority shareholders or group of shareholders who combine to form a majority, are fiduciaries, and they may not use their voting power to benefit themselves at the expense of the minority"); *Ferber v. Am. Lamp Corp.,* 469 A.2d 1046, 1050 (Pa. 1983) ("majority shareholdes have a duty to protect the interests of the minority"); *Weisbecker v. Hosiery Patents, Inc.,* 51 A.2d 811, 814 (Pa. 1947) ("the holder of the majority of the stock owes to the other stockholders and the corporation the duty to exercise good faith, care, and diligence to conserve the property of the corporation and to protect the interests of the minority stockholders"); *Viener v. Jacobs,* 834 A.2d 546, 556 (Pa. Super. Ct. 2003) ("Pennsylvania law holds that an attempt by a group of majority shareholders to "freeze out" minority shareholders for the purpose of continuing the enterprise for the benefit of the majority shareholders constitutes a breach of the majority shareholders' fiduciary duty to the minority shareholders").

Plaintiff's Complaint alleges, and the Proxy Statement confirms, that the IDOD structured the Transaction so that the Controlling Shareholder Group, after contribution of their proxies to North Lime, controlled a *71% interest* in Irex through North Lime, which North Lime then voted in favor of the Transaction.  Compl. ¶¶ 2, 6, 19, 32-33, 43, 79.[17]  As a controlling majority, IDOD, North Lime, and Irex owed fiduciary duties to Plaintiff and the other Non-Participating Shareholders to act in "good faith, care and diligence to . . . protect the interests of

---

[17] Defendants suggest that the Insider Director/Officer Defendants lacked the requisite shares to control the outcome of the Transaction (Defs.' Mot. at 9), but it is apparent from the Proxy Statement that (1) North Lime was controlled by the Insider Director/Officer Defendants (Exhibit 1 (Proxy Statement) at 6, 9-10), (2) North Lime was formed by the IDOD to acquire Irex in the Transaction (Exhibit 1 at 6), and (3) North Lime controlled 71% of the outstanding shares of Irex stock at the time the Transaction was submitted for shareholder approval, and voted the entirety of its holdings in favor of the Transaction (Exhibit 1 at 8-9).  These indisputable truths are also reflected in the allegations of the Complaint.  *See* Compl. ¶¶ 2, 6, 19, 32-33, 43, 79 (collectively establishing that North Lime, Irex, and the IDOD, along with "other substantial shareholders of Irex" affiliated with the IDOD, controlled "71% of the outstanding shares of Irex common stock" at the time of the Transaction"); and, as such, were the "controlling majority shareholders of Irex at the time of the Transaction"); *see also,* Exhibit 1 (Proxy Statement) at 6, 8 (North Lime, which was formed by the executive officers, directors, and certain larger shareholders of Irex, was expected to hold proxies to vote 71% of the outstanding Irex shares in favor of the Transaction.).  Plaintiff contends that it was the IDOD who controlled North Lime and the outcome of the Transaction, and they are culpable for breaching their fiduciary duties to Plaintiff.  Compl. ¶¶ 6, 17, 32-33, 43.  If Defendants believe others share in their liability to Plaintiff, they have the procedural mechanisms to join them in the litigation, *see, e.g.,* Fed. R. Civ. P. 14, but this does not change the control exercised by the IDOD over the Transaction.  *See also Viener v. Jacobs,* 834 A.2d at 558 (majority shareholder who breached fiduciary duties to minority shareholder properly held liable for all damages regardless of other potential co-defendants).

As demonstrated by the foregoing, Defendants notion that North Lime "was not a majority or controlling shareholder at the time of the alleged harm" is absurd.  Defs.' Mot. to Dismiss at 29-30.  Confused by their own contrived misperception that Plaintiff was harmed when the *proposed* Transaction was disclosed – as opposed to the actual injury that Plaintiff suffered when the Transaction was approved – Defendants helpfully note that North Lime had no role in Irex at the earlier – and utterly irrelevant – time.  *Id.*  But, as convincingly shown in its argument regarding the applicable limitations period, Plaintiff suffered no injury until the Transaction was approved and, as the Complaint alleges, that approval was completely dependent upon North Lime, as representative for the Controlling Shareholder Group, casting its votes in favor of the Transaction.  Compl. ¶¶ 6, 32-33.

the minority shareholders."[18] *Korman Corp. v. Franklin Town Corp.*, 1984 WL 2465, * (Pa.

Comm. Pl. 1984) (categorizing the types of conduct which would qualify as a breach of fiduciary

duty). Pennsylvania courts have routinely held that a squeeze out of a minority shareholder

"must be viewed" as the majority's breach of its fiduciary duty to the minority for which the

"law recognizes a right to recover."[19] *Orchard v. Covelli*, 590 F. Supp. 1548, 1557 (W.D. Pa.

1984), *appeal dismissed*, 791 F.2d 920 (3d Cir. 1986); *Harper v. Superior Tool and Die Co.*,

---

[18] Because a majority's breach of fiduciary duty is directed at the minority shareholders, the law
recognizes that this is a direct, individual – and not a derivative - claim:

> It is hornbook law that claims asserted for the benefit of
> stockholders *qua* stockholders in a corporation because of the
> tortious acts of its officers or those actions in conjunction with
> them is a class suit, a derivative action, and recovery is for the
> benefit of the corporation directly and indirectly to its
> stockholders. *It is equally clear that where a corporation,
> tortiously conspires with others to damage an individual and does
> so a cause of action arises which belongs to the individual.*

*Davis v. U.S. Gypsum Co.*, 451 F.2d 659, 662 (3d Cir.1971). *Accord Blair v. Purcell*, 2008 WL
250096, *8 n.14 (M.D. Pa. Jan. 29, 2008) (citing *In re Earned Capital Corp.*, 331 B.R. 208, 221-
22 (W.D. Pa. 2005) (quoting W. Edward Sell & William H. Clark, Jr., Pennsylvania Business
Corporations (1997) § 1782.2) ("*[W]here there is a breach of the fiduciary duty which the
directors, officers, or majority shareholders owe to a shareholder or the minority shareholders
... the shareholder injured by such a breach has a direct, personal cause of action.*") (emphasis
added); *see also* 12B Fletchers Cyclopedia of Corporations § 5915 (2000 Revised Volume)
(explaining that a shareholder may bring a suit individually for "acts depriving a shareholder or
member rights as such, including acts ... depriving minority shareholders of their right ... to
participate in the affairs of the corporation")).

[19] Defendants say that the "essence" of the Transaction was really self-dealing, not a squeeze-out
merger, and insist that a "self-dealing" transaction requires that Plaintiff assert claims
derivatively. Defs.' Mot. Dismiss at 25. This is meaningless semantics given the allegations in
the Complaint. True enough; Defendants engaged in perfidious self-dealing in orchestrating the
Transaction, but the victim(s) of their manipulative self-dealing were Plaintiffs and the other
Non-Participating Shareholders – not Irex. Where the corporation is the victim of a director's
self-dealing, then the resulting claim is assuredly derivative because the injury is reflected in lost
*corporate* opportunity. Here, however, the objective of Defendants' self-dealing was, as
acknowledged by defendant Liddell, the elimination of the minority shareholders so that the
majority could enjoy the tax benefits of an S-Corporation. Compl. ¶¶ 32-33, 43. The injury
precipitated by this objective was a breach of fiduciary duties owed, not to Irex, but to the

1987 WL 18414, *2 (E.D. Pa. 1987) (same); *Barter v. Diodoardo*, 771 A.2d 835, 839-40 (Pa. Super. Ct. 2001) (citing *In re Jones & Laughlin Steel Corp.*, 412 A.2d at 1102-03) (same)).

Here, the Complaint unambiguously pleads that the Transaction was structured so that minority shareholders, or the "Non-Participating Shareholders" as euphemistically labeled by defendant Liddell and used in the Proxy Statement, were being forced out of their ownership in Irex so that the IDOD could merge Irex into North Lime and secure "S" corporation tax treatment to achieve significant tax benefits for themselves. Even a casual reading of the "Purpose of and Reasons for the Merger" reveals that the benefits of the merger were exclusively directed to the Controlling Shareholder group. Exhibit 1 (Proxy Statement) at 14. "Non-Participating Shareholders," like Plaintiff, were ostensibly afforded "liquidity at a fair price," *id.,* but, as detailed in the Complaint, Plaintiff could always obtain liquidity simply by selling its shares, and the notion that the Transaction produced a "fair" price was a mirage. Compl. ¶¶ 1-2, 30, 81-82.

The allegations in the Complaint plead a paradigm "squeeze-out" merger effected by a controlling majority shareholder group in violation of its fiduciary duties to the non-participating minority. "[W]here there is a breach of the fiduciary duty which the directors, officers, or majority shareholders owe to a shareholder or the minority shareholders ... the shareholder injured by such a breach has a direct, personal cause of action." W. Edward Sell & William H. Clark, Jr., Pennsylvania Business Corporations (1997) § 1782.2. The Complaint properly pleads direct claims.

---

minority shareholders and, as such, represents a claim uniquely direct and personal to Plaintiff and to the other squeezed-out Non-Participating Shareholders.

## VII.   PLAINTIFF'S AIDING AND ABETTING CLAIM (COUNT II) PROPERLY STATES A CLAIM FOR WHICH RELIEF MAY BE GRANTED

The "three elements of a cause of action for aiding and abetting a breach of a fiduciary duty under Pennsylvania law are: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach." *Reis v. Barley, Snyder, Senft & Cohen LLC*, 484 F. Supp. 337, 350-51 (E.D. Pa. 2007) (Gardner, J.) (denying, *inter alia*, defendant's motion to dismiss aiding and abetting claim because it is a cognizable claim under Pennsylvania law). Having denied the existence of fiduciary duties owed to Plaintiff by the Controlling Shareholder Group, Defendants create their own self-fulfilling predicate for dismissal of Plaintiff's aiding and abetting claim. Defs.' Mot. to Dismiss at 26-28. Alternatively, they argue that this claim should be dismissed because no "supporting factual allegations" have been pleaded. *Id.* Given that Plaintiff's earlier arguments convincingly establish that the Controlling Shareholder Group owed Plaintiff fiduciary duties under Pennsylvania law, and that the Complaint alleges sufficient facts to support this claim, Plaintiff will focus only on Defendants' alternative argument attacking the sufficiency of Plaintiff's aiding and abetting allegations.

Plaintiff's Complaint provides an accurate and detailed account of the role that the Additional Defendants had in assuring the consummation of the Transaction. From Defendants' emails, meeting minutes, and notes, Plaintiff pleads numerous facts supporting the allegations made in its Complaint asserting that the Additional Defendants, *qua* the Special Committee, failed to conduct anything resembling a detached and independent evaluation of the fairness of the merger or impartially and independently negotiate consideration for their Irex stock that was fair to the minority shareholders.

New Master) _1                              27

Specifically, Plaintiff's Complaint alleges that the Additional Defendants permitted the IDOD, and especially defendant Liddell, to subvert their activities and exert undue influence on their handling of those tasks assigned to the Special Committee precisely because Liddell and the other IDODs were impossibly conflicted in the Transaction. The Additional Defendants, at the direct urging of defendant Liddell: (1) placed undue reliance upon flawed financial data and projections prepared by Irex under the direction and control of the IDOD, every one of whom had a conflict of interest in the Transaction (Compl. ¶¶ 61-62); (2) relied heavily upon stock valuations and other information provided by Snyder, even as Snyder was serving as financial advisor to North Lime for the Transaction (Compl. ¶¶ 53-54); (3) met personally with defendant Liddell to allow Liddell to promote his views on the value of Irex stock and how that value should be discounted in the Transaction (Compl. ¶¶ 54, 56-57); (4) received improper communications from defendant Liddell regarding the "asbestos discount" that the Special Committee should apply to its Irex stock valuation (Compl. ¶ 66); and (5) improperly and unfairly circumscribed the potential value for Irex stock by setting an artificial ceiling on the stock price during "negotiations" with defendant Liddell (Compl. ¶ 64). Moreover, the Additional Defendants, all of whom had some form of prior affiliation with Irex, knew that the Special Committee had been formed because *all* of Irex's directors and executive officers had an interest in the Transaction.  Compl. ¶¶ 46, 49.  Indeed, one of the first "official acts" of the Additional Directors was to seek an amendment to Irex's bylaws providing the maximum statutory protection available indemnifying them from liability for any acts undertaken in connection with their work as the Special Committee.  Compl. ¶ 50.

These alleged facts, and the reasonable inferences drawn from them, more than adequately satisfy Plaintiff's pleading requirements for an aiding and abetting claim against the Additional Defendants.

## VIII. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT III) IS NOT DUPLICATIVE OF PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM

Defendants seek dismissal of Plaintiff's unjust enrichment claim (Count III) on two grounds: (1) the appraisal proceeding constitutes the exclusive remedy for Plaintiff's claims and (2) Plaintiff's unjust enrichment claim is duplicative of its breach of fiduciary duty claim. Defs.' Mot. to Dismiss at 30-32. Having already demonstrated that its common law tort claims are not within the scope of a statutory appraisal proceeding and may properly be pursued in this Court, *see, supra*, Part V, Plaintiff turns to the other flawed argument advanced by Defendants regarding its unjust enrichment claim.

Under Pennsylvania law, a claim for unjust enrichment requires three elements: "benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits without payment of value." *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F. 3d 429, 477 (3d Cir. 2000) (alteration and citation omitted). *See also Stillwell Value Partners I, L.P. v. Prudential Mutual Holding Co.*, 2007 WL 2345281 (E.D. Pa. Aug. 15, 2007) (citations omitted). "When a party acts wrongly or fraudulently to acquire property, as is alleged to have occurred here, a claim for unjust enrichment will lie." *JRNA, Inc. v. Snow*, 2007 WL 2253493, *3 (E.D. Pa. Aug. 3, 2007) (citation omitted) (holding plaintiff demonstrated a reasonable likelihood of success on her unjust enrichment claim given evidence of defendants' repeated unauthorized withdrawals from plaintiff's bank account). Indeed, an unjust enrichment claim lies even without a discrete "showing of knowledge or wrongful intent on the part of the benefited party" because the crux of the inquiry is whether it would be

New Master) _1

"unconscionable or unjust for [the defendant] to retain the benefits." *Stilwell Value Partners I,* 2007 WL 2345281 at \*11-12 (citing *Allegheny Gen'l Hosp. v. Philip Morris,* 228 F.3d at 477 and *Torchia v. Torchia,* 499 A.2d 581, 581 (Pa. Super. Ct. 1985)).

   Contrary to Defendants' arguments, an unjust enrichment claim is generally brought in tandem with a breach of fiduciary duty (or other tort) claim so that the two claims are pleaded independently.  In a recent decision in this District, the court separately addressed the shareholder plaintiff's unjust enrichment claim *and* breach of fiduciary duty claim by applying Pennsylvania's unique analysis for each claim. *Stilwell Value Partners I,* 2007 WL 2345281 at \*8-12. *Stilwell Value Partners I* is instructive as it demonstrates that the essential elements of an unjust enrichment claim are facially different from the elements of a claim for breach of fiduciary duty. *Id.* at \*8.  From the *Stilwell Value Partners I* analysis of the plaintiff's unjust enrichment claim, it is apparent that the existence of an unjust enrichment claim is not dependent upon maintaining a breach of fiduciary claim.  In *Stilwell Value Partners I,* the court proceeded with an independent analysis of the unjust enrichment claim even after the breach of fiduciary duty claim against the director defendants had been dismissed, *id.* at \*11-12, and specifically focused on whether retention of the benefit was "unconscionable" or "unjust" even in the absence of a separately maintainable fiduciary breach. *Id.*

   Defendants rely upon *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris,* 171 F.3d 912 (3d Cir. 1999) in arguing that Plaintiff's unjust enrichment claim is subsumed by its claim for breach of fiduciary duty. *Steamfitters,* however, cannot be read as broadly as Defendants pretend; the Third Circuit dismissed Plaintiff's unjust enrichment claim not because it was "subsumed" or "duplicative" of plaintiff's other claims but because the court could find no basis for asserting proximate causation that would support either an unjust

enrichment claim or any of the underlying tort theories plead by the plaintiff in that case. *Steamfitters*, 171 F.3d at 936-37. The Complaint reflects no similar absence of underlying causation in this case. *See, e.g., Flood v. Makowski*, 2004 WL 1908221, *37 n.26 (M.D. Pa. Aug. 24, 2004) (holding: "In the present case, Plaintiffs properly allege multiple tort claims, which strongly suggest that the unjust enrichment claim should remain in the action.").

As Plaintiff's claim for unjust enrichment may be maintained separately from its breach of fiduciary claim and represents an independent basis for relief properly supported by the allegations in the Complaint, Defendant's motion to dismiss this claim should be denied.

## IX. THE PENDENCY OF THE APPRAISAL PROCEEDING DOES NOT PRESENT "EXCEPTIONAL CIRCUMSTANCES" WARRANTING A STAY OF THIS ACTION

Ultimately, "the decision to stay civil proceedings calls for the trial court, in its discretion, to balance the various interests of the parties, the court, and the public." *Landis v. North Am. Co.*, 299 U.S. 248 (1931); *see also Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967). In assessing a requested stay premised on the existence of parallel state court proceedings, however, the Court should be mindful that "the virtually unflagging obligation to adjudicate justiciable controversies [requires that] as a general rule we may stay litigation because of parallel state proceedings only under exceptional circumstances." *Coltec Indus., Inc. v. Continental Ins. Co.*, 2005 WL 1126951, *2 (E.D. Pa. May 11, 2005) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (Supreme Court notes that, "[A]s between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction'")). Among the factors that a court may consider in determining the existence of such "exceptional circumstances" are: (1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of

parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of parties, counsel and witnesses; and (7) possibility of prejudice to a party as a result of the stay. *Nigro v. Blumberg*, 373 F. Supp. 1206, 1212-13 (E.D. Pa. 1974). Even a cursory review of these factors demonstrates no "exceptional circumstances" warranting a stay of this Action.

Although Defendants have consistently misrepresented the gravamen of this Action as simply a claim for payment of "fair value" for Plaintiff's Irex shares, it is apparent from the Complaint that this case involves different parties seeking different relief on entirely different theories of liability from the matters pending in the long-delayed appraisal proceeding initiated by Irex in Lancaster County. This Action has been commenced as a class action which, alone, distinguishes both the parties and the scope of relief from the appraisal proceeding. This Action seeks recovery for *all* minority shareholders harmed by the deceitful self-dealing of the Controlling Shareholder Group, not simply those fortunate enough to have preserved the "dissenters rights" provided under a statutory scheme that presumes the consummation of a "fair" transaction by directors who owe a fiduciary obligation only to the corporation – not the individual shareholders. Nothing in the appraisal proceeding will address the issues presented by the Complaint in Plaintiff's claims for breach of fiduciary duty, aiding and abetting, and unjust enrichment since these claims are premised not only upon the unfair consideration forced upon Plaintiff and the minority shareholders in the Transaction but also upon the Controlling Shareholder Group's tortuous violation of its fiduciary obligations to the "Non-Participating Shareholders."

In Pennsylvania, shareholder plaintiffs have litigated violations of federal securities law and breach of fiduciary duty claims against corporate defendants while

simultaneously exercising their dissenters' rights in a state court appraisal proceeding.[20]  *See In re American Sterilizer Shareholder Litig.*, 1985 WL 4027, *3-4 (E.D. Pa. 1985) (noting that some class members had exercised "dissenters rights" while the class litigation proceeded); *Dower v. Mosser Indus., Inc.*, 488 F. Supp. 1328, 1333 (E.D. Pa. 1980) (appraisal proceeding pending while federal action continued).  Pennsylvania is not alone; in Delaware, for example, a pending appraisal proceeding is generally stayed in favor of a parallel proceeding where the question of the underlying validity of the transaction is at issue because the broader action "may provide a complete resolution" of the shareholder's claims and "obviate the need for an appraisal proceeding."  *In Matter of Application of Advanced Drivers Educ. Products and Training, Inc. ("ADEPT")*, 1996 WL 487940, *4 (Del. Ch. Aug. 16, 1996) (staying appraisal proceeding during pendency of the litigation challenging merger).  *See also Engel v. Magnavox Co.*, 1978 WL 976 *1 (Del. Ch. Oct. 16, 1978) (appraisal proceeding stayed pending litigation challenging merger); *Pence v. Nat'l Beef Packing* Co., 1976 WL 1703, *3 (Del. Ch. 1976) (staying appraisal proceeding during pendency of litigation challenging merger).  Given the limited scope of appraisal proceedings provided by Pennsylvania's appraisal statute (*see* 15 Pa. C.S.A. § 1579), there is simply no basis for staying this Action in favor of a proceeding that lacks the jurisdictional authority to adjudicate the claims alleged in the Complaint.

Since "determination of the value of what plaintiffs would have received absent any wrongdoing will involve different factors than those considered by the [appraisal court] in determining the appraised value of the plaintiffs' stock[,]" the evidence this Court will receive to assess whether the Transaction was entirely fair, as to both price and process, will never surface

---

[20] An exhaustive search of Pennsylvania case law produced no examples of a federal or state court ordering a stay pending the resolution of a related appraisal proceeding.  Defendants'

in the appraisal court.[21] *Dofflemyer, supra*, 558 F. Supp. at 381 (rejecting the defendant's argument that fair value paid to shareholders in the appraisal proceeding also satisfied plaintiff's breach of fiduciary duty claims). Only this forum provides the opportunity for Plaintiff to receive a full and fair adjudication of its claims.[22]

Given the limited jurisdiction of the appraisal proceeding, the clear prejudice to Plaintiff if this Action is stayed, and the obviously broader issues implicated by the Complaint in this case, there are no grounds warranting the stay sought by Defendants here and their petition should be denied.

---

papers imply the same conclusion since they cite no Pennsylvania decision supporting the stay they request from this Court. Defs.' Mot. Dismiss at 32-35.

[21] Defendants are well aware that the discovery objections asserted by Irex in the appraisal proceeding are directed to circumscribing that proceeding and insuring that the appraisal court never addresses the fiduciary misfeasance of the Controlling Shareholder Group or the Additional Defendants. *See* Ex. A.

[22] If Defendants are truly vexed by the simultaneous demands of these two proceedings, Plaintiff is willing to consider a stipulated stay of the narrower appraisal proceeding since this Action "may provide a complete resolution" of the shareholder's claims and "obviate the need for an appraisal proceeding." *In Matter of Application of Advanced Drivers Educ. Products and Training, Inc. ("ADEPT")*, 1996 WL 487940 at *4.

## X.     CONCLUSION

Defendants' expansive Motion grasps at virtually every 12(b)(6) tool found in the defendant's standard playbook, but none of the arguments has any footing in Pennsylvania law or provides any basis for dismissing any of Plaintiff's claims.  For all the reasons set forth herein, Plaintiff respectfully requests that the Court deny the Motion in its entirety.


Dated:  January 27, 2009                             Respectfully submitted,


                                                     /s/ George W. Croner
                                                     George W. Croner, Esquire
                                                     Pa. Identification No. 33514
                                                     Christina Donato Saler, Esquire
                                                     Pa. Identification No:  92017
                                                     **KOHN, SWIFT & GRAF, P.C.**
                                                     One South Broad Street
                                                     Suite 2100
                                                     Philadelphia, PA  19107
                                                     Telephone:  215-238-1700
                                                     Fax:  215-238-1968
                                                     gcroner@kohnswift.com
                                                     cdsaler@kohnswift.com

                                                     *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Christina Donato Saler, hereby certify that a true and correct copy of *Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint, or, In the Alternative, to Stay the Action* was filed electronically and is available for viewing and downloading from the Electronic Case Filing system.

The above-mentioned document will also be served via first class mail, postage prepaid upon:

### VIA FIRST CLASS MAIL

Steven B. Feirson, Esquire
Cheryl A. Krause, Esquire
DECHERT LLP
Cira Center
2929 Arch Street
Philadelphia, PA 19104-2808

DATED:  January 27, 2009

George W. Croner, Esquire
Christina Donato Saler, Esquire
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
(215) 238-1700

49468_1